UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LPF 1200 CLINTON EQUITY LLC,<br><br>Plaintiff,<br><br>v.<br><br>RENT LEVELING & STABILIZATION BOARD OF THE CITY OF HOBOKEN and CITY OF HOBOKEN,<br><br>Defendants. | Civ. No. 2:23-cv-23263-WJM-MAH<br><br>OPINION |

### WILLIAM J. MARTINI, U.S.D.C.:

This matter comes before the Court on the motions to dismiss filed by the Defendants: (1) the Rent Leveling & Stabilization Board of the City of Hoboken (the "Board") and (2) the City of Hoboken (the "City," or "Hoboken"). Plaintiff LPF 1200 Clinton Equity LLC seeks declaratory and injunctive relief, as well as compensatory damages, for Defendants' alleged violation of Plaintiff's rights under a New Jersey statute exempting certain dwellings from rent control. Defendants argue, *inter alia*, that the Court should decline to exercise its subject matter jurisdiction. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court abstains from exercising its jurisdiction over Plaintiff's claims and accordingly **GRANTS** Defendants' motions to dismiss.

### I. BACKGROUND

This case centers on a high-end residential building in Hoboken, New Jersey named the Jordan that operated, until recently, as exempt from rent control. New Jersey provides by statute that certain multi-dwelling apartment buildings are exempt from local rent regulation. *See* N.J.S.A. § 2A:42-84.1 et seq. The statute was introduced by the state legislature in 1987 to increase the supply of newly constructed rental housing during a period of stagnant development. *Id.* at § 84.5. Plaintiff, a limited liability company, purchased the 159-unit building in July 2018, approximately two years after construction completed. Compl. ¶¶ 4-8, 63-65, ECF No. 29.

#### A. The Statutory Schemes

##### 1. New Jersey's Exemption Statute

1

Under N.J.S.A. § 2A:42-84.2 et seq. ("Exemption Statute"), multi-unit residential buildings in New Jersey may be exempt from local rent control or rent leveling regulations for thirty years following the completion of construction or for the duration of an initial loan amortization period, whichever is less. *See* § 84.2. To claim an exemption under the statute, a landlord must file a claim with the Construction Code Official at least thirty days prior to the issuance of a certificate of occupancy. *Id.* at § 84.4. There is no dispute the Jordan timely filed its claim pursuant to Section 84.4. Importantly, under Section 84.3, the owner of an exempted building must provide prospective tenants with written notice about the rent control exemption in leases for tenancy. *Id.* at § 84.3. Specifically, Section 84.3 provides:

> The owner of any multiple dwelling exempted from a rent control or rent leveling ordinance pursuant to this act, shall, prior to entering into any lease with a person for tenancy of any premises located in the multiple dwelling, furnish the prospective tenant with a written statement that the multiple dwelling in which the premises is located is exempt from rent control or rent leveling for such time as may remain in the exemption period. Each lease offered to a prospective tenant for any dwelling unit therein during the period the multiple dwelling is so exempted shall contain a provision notifying the tenant of the exemption.

*Id.*

Additionally, Section 84.5 states that no municipal ordinance may "limit, diminish, alter or impair any exemption afforded" by the statute. *Id.* at § 84.5.[1]

### 2. Hoboken's Rent Control Ordinance

Like many municipalities, Hoboken has a rent control ordinance that governs rent charges and increases for residential dwellings in the city. *See* City of Hoboken Municipal Rent Control Ordinance, Chapter 155, et seq., Article II, § 155-3-17. But in accordance with the Exemption Statute, the ordinance generally does not apply to exempted multi-dwelling buildings. *Id.* at § 155-2.H. However, Hoboken's ordinance states that exempted buildings are only excused from the ordinance "where a landlord complied with all requirements contained in [the Exemption Statute], including but not limited to notice to the Construction Code Official at least 30 days before a certificate of occupancy is issued *and notification to tenants by way of a provision in their lease.*" *Id.* (emphasis added). Plaintiff alleges that this section of the ordinance conflicts with the Exemption Statute, as it inaccurately suggests notice to tenants is a condition to obtain and maintain an exemption, contrary to the plain language of the Exemption Statute. Compl. ¶ 57.

### B. The Dispute

Plaintiff alleges that, from the time it acquired the Jordan in July 2018 through September 2021, it provided prospective and renewal tenants with statements that

---

[1] Section 84.5 states: "No municipality, county or other political subdivision of the State, or agency or instrumentality thereof, shall adopt any ordinance, resolution, or rule or regulation, or take any other action, to limit, diminish, alter or impair any exemption afforded pursuant to P.L.1987, c.153."

2

addressed local rent control and the existence of the Exemption Statute. *Id.* at ¶ 67. But during this period, such notices were not provided in tenant leases in contravention of Section 84.3 of the Exemption Statute. *See id.* at ¶ 69 (stating that, only as a result of increased inquiries regarding the Jordan's exemption status in October 2021, did Plaintiff begin providing tenants notice of relevant regulations by way of a lease provision).

In the spring of 2023, twelve residents of the Jordan sought a "legal rent calculation request"—a request to the Hoboken Rent Regulation Officer for a calculation to determine the rent permitted to be charged under the city's rent control ordinance. *Id.* at ¶ 10. The Hoboken Rent Regulation Officer advised the residents in June 2023 that the Jordan was exempt from rent control under the Exemption Statute. *Id.* at ¶¶ 72-73. The residents subsequently filed an appeal with the Board, which held a hearing addressing the matter on September 13, 2023. *Id.* at ¶¶ 12, 80-81. Plaintiff alleges it received a letter from the Board regarding the September 13 hearing on September 11, only two days prior to the proceeding. *Id.* at ¶¶ 14, 81. Counsel for Plaintiff appeared at the hearing and requested the matter be adjourned to permit sufficient time to prepare, but the Board denied the request and considered the matter. *Id.* at ¶ 82.

After hearing from the residents and Plaintiff's counsel, the Board voted 4 to 1 to establish that the Jordan is not exempt from rent control because of failure to meet the requirements of the Exemption Statute and all its subsections. *Id.* at ¶ 84. On November 8, 2023, the Board memorialized its decision by resolution that declares that the Jordan failed to strictly comply with the Exemption Statute and is subject to Hoboken's rent control ordinance. *Id.* at ¶¶ 85-86. The resolution specifically states in relevant part:

1. The landlord did not strictly comply with N.J.S.A. 2A:42-84.1, et seq., insofar as prospective tenants were not sufficiently notified of the Jordan's exemption to the Ordinance.

2. Notice of exemption to tenants is a specific element of the exemption pursuant to N.J.S.A. 2A:42-84.3, such that failure to provide proper notice shall result in a failure of such exemption to apply to The Jordan.

*Id.* at ¶ 86 (citing the Board's resolution).

## II.  PROCEDURAL HISTORY

Plaintiff subsequently initiated this lawsuit. On April 2, 2024, Plaintiff filed the operative complaint alleging two causes of action.[2] ECF No. 29. The gravamen of the complaint is that the Board unlawfully "stripped" the Jordan of its rent control exemption since, according to Plaintiff, the statute's tenant-notice requirement (Section 84.3) is not a condition of obtaining or maintaining an exemption. Compl. ¶¶ 125-128. Plaintiff further alleges that the Exemption Statute preempts local rent control, and neither the Board nor the City may impose "additional requirements to qualify or maintain an exemption." *Id.* at

---

[2] Plaintiff's second amended complaint is its first substantive amended pleading as the initial amended complaint was filed only to correct the name of a company. *See generally* Compl., ECF No. 29.

3

¶ 129. Plaintiff estimates that denial of the Jordan's rent control exemption will cause losses in the millions of dollars through October 2046, the remaining period of the building's prior exemption. *Id.* at ¶ 36. Further, it contends that the various legal rent calculation requests residents have made since the Board ruled against the Jordan will deprive Plaintiff of approximately $107,000 in annual rent under lease agreements and $96,700 in refunds of rental overcharges. *Id.* at ¶¶ 34-35.

On April 19, 2024, the City and the Board filed separate motions to dismiss the complaint. ECF Nos. 31, 32. On May 6, 2024, Plaintiff filed briefs in opposition to the motions. ECF Nos. 34, 35. Defendants filed their respective reply briefs on June 10, 2024. ECF Nos. 38, 39.

### III. LEGAL STANDARD

In addressing a motion to dismiss, a court must first find jurisdiction over the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 140 L. Ed. 2d 210 (1998) (citations omitted). When a court has jurisdiction, Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

### IV. DISCUSSION

Count One, brought as an action in lieu of prerogative writ, asserts the Board's resolution is "arbitrary, capricious, and unreasonable" as (1) the Jordan met the only condition precedent to obtaining the exemption under the Exemption Statute (timely filing a claim with the Construction Code Official), (2) the Board had no authority to consider the validity of the statute, and (3) state law preempts local rent control. Compl. ¶¶ 99-123. Under Count Two, Plaintiff seeks a declaration from the Court that: (1) the Jordan is exempt from Hoboken's rent control ordinance under the Exemption Statute; (2) the Jordan may charge market rents; (3) the Board's resolution is *ultra vires* as it has no authority to adjudicate whether the Jordan qualifies for exemption; (4) Section 155-2.H of Hoboken's ordinance is *ultra vires* as it impermissibly imposes an additional condition to qualify for exemption; and (5) the Hoboken Rent Regulation Officer may not provide legal rent calculations for tenants of the Jordan. *Id.* at ¶¶ 124-130

The parties do not dispute this Court's diversity jurisdiction over the lawsuit—Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000[3]—but the Board argues in its motion that the Court should abstain from exercising its jurisdiction pursuant to (1) its discretion under the Declaratory Judgment Act,

---

[3] 28 U.S.C. § 1332. Defendants are citizens of New Jersey and the owner of the membership interests in Plaintiff, an LLC, is a Maryland corporation with a principal place of business in Illinois. Compl. ¶¶ 20-28.

28 U.S.C. § 2201, or (2) the doctrine of abstention announced in *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959) ("*Thibodaux*"). *See generally* ECF No. 32.[4] The Court must address abstention before proceeding further in its analysis.

### A. Discretion to Abstain Under the Declaratory Judgment Act

Under the Declaratory Judgment Act ("DJA"), federal courts "*may* declare the rights of and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2202(a) (emphasis added).

When only a declaratory judgment is sought, courts retain significant discretion to dismiss or stay claims seeking declaratory relief, *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146-47 (3d Cir. 2014), and may decline jurisdiction in deference to parallel state proceedings. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-83 (1995); *see Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 227, 229 (3d Cir. 2017) (observing that "courts have greater discretion to decline jurisdiction over actions for declaratory judgments because they seek an adjudication of rights and obligations prior to the enforcement of a remedy"). But when a complaint also contains a claim for legal relief or damages, as here, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). This Circuit applies the independent claim test to determine whether legal claims are independent of declaratory actions. *Rarick*, 852 F.3d at 229. "Non-declaratory claims are 'independent' of a declaratory claim when they are alone sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without the requested declaratory relief.'" *Id.* at 228. (quoting *R.R. St. & Co., Inc. v. Vulcan Materials Co.*, 569 F.3d 711, 715 (7th Cir. 2009) (citation omitted)).

Applying the independent claim test for jurisdictional and substantive independence, the Court finds that Plaintiff's non-declaratory claim under Count One is alone insufficient to invoke the Court's diversity jurisdiction. While the parties remain diverse and Plaintiff satisfies the amount-in-controversy threshold, Count One asserts an action in lieu of prerogative writ, which is not typically brought in federal court as a standalone claim. *See* Pl. Opp. to Board Mot. 34 (briefing Count One as an action in lieu of prerogative writ). An action in lieu of prerogative writ is "derived from the New Jersey State Constitution, which preserved the substance of common law prerogative writ review by permitting parties to seek 'review, hearing and relief' in the *Superior Court* of all actions of municipal agencies." *OM 309-311 6th St., LLC v. City of Union City*, No. 21-12051, 2022 WL 855769, at *11 (D.N.J. Mar. 23, 2022) (citing N.J. Const. Art. VI, § 5, ¶ 4) (emphasis added). New Jersey Court Rule 4:69-1 specifically provides that review, hearing, and relief under this mechanism "shall be afforded by an action in the Law Division, Civil Part, of the *Superior Court*." N.J. Ct. R. 4:69-1 (emphasis added). Further, an action in lieu of prerogative writ, unlike other civil claims, reviews the municipal decision at issue and does not award damages. *Casser v. Twp. of Knowlton*, No. 17-01174,

---

[4] The Board's motion to dismiss addresses abstention at length, while the City's motion focuses on the merits of Plaintiff' claims, if the Court is inclined to accept jurisdiction. *See generally* ECF Nos. 31, 32.

2018 WL 6069165, at *3 (D.N.J. Nov. 20, 2018), *aff'd*, 803 F. App'x 602 (3d Cir. 2020). Here, Plaintiff's non-declaratory claim is dependent on the declaratory request, and the Court accordingly retains discretion to decline jurisdiction of the entire action. *Rarick*, 852 F.3d 223, 229 (3d Cir. 2017).

When deciding to exercise or decline DJA jurisdiction, the Court must next consider whether there are "parallel state proceedings" between the parties, and here there are not. *See Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017).[5] The absence of parallel state proceedings, though not dispositive, is a significant factor weighing in favor of jurisdiction. *Id.* Where there are no parallel state proceedings, a district court declining jurisdiction must "be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." *Reifer*, 751 F.3d at 144. The Third Circuit has promulgated the following inexhaustive list of factors to guide the analysis:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.*

Notably, "some factors may be weighed heavier than others based on the circumstances of each case." *Mattdogg, Inc. v. Philadelphia Indem. Ins. Co.*, No. 20-6889, 2020 WL 6111038, at *4 (D.N.J. Oct. 16, 2020) (citing *Reifer*, 751 F.3d at 146). For instance, the "nature of the state law issue raised" may be sufficient to decline jurisdiction. *Reifer*, 751 F.3d at 148 ("We conclude that declining jurisdiction was proper because the lack of pending parallel state proceedings was outweighed by another relevant consideration, namely, the nature of the state law issue raised.").

---

[5] "The Supreme Court has described a 'parallel' proceeding as 'another proceeding ... pending in a state court in which all the matters in controversy between the parties could be fully adjudicated.'" *Reifer*, 751 F.3d at 137 (citation omitted). The Third Circuit has further instructed that "there must be a substantial similarity in issues and parties between contemporaneously pending proceedings" to make those proceedings parallel. *Kelly*, 868 F.3d at 284.

The Court turns to the third *Reifer* factor—the public interest in settling the uncertainty of the obligation. *Id.* at 146. Here, the New Jersey public has as a strong interest in maintaining adequate housing through new construction and sufficient affordable housing through rent control. These interests are tied to the state's interest in adjudicating in its own forum matters concerning housing policy, as well as issues involving overlapping state statutes and local ordinances. Additionally, and perhaps most important, state law on this issue is unclear, which significantly weighs in favor of abstention.[6] In this case, it is not clear whether the Jordan's failure to strictly adhere to the Exemption Statute's essential tenant-notice provision subjects it to local rent control. There is no controlling state court precedent, and Section 84.3 has never been interpreted by the Supreme Court of New Jersey.[7] Given the lack of precedential authority, the Court, in deciding the matter, would have to interpret New Jersey's legislative intent requiring notice to prospective tenants under Section 84.3 to determine the consequences of failing to comply with that provision.[8] New Jersey courts are better suited to inquire into the state's legislative goals and public policy. *See i2i Optique LLC v. Valley Forge Ins. Co.*, 515 F. Supp. 3d 358, 365 (E.D. Pa. 2021).

As to the fourth factor, Plaintiff could have brought both actions—particularly the action in lieu of prerogative writ under Count One—in state court. The seventh factor is the prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata. See Reifer*, 741 F. 3d at 140-141. Here, the Board charges Plaintiff with procedural fencing tactics, noting that abstention is warranted because it "precludes Plaintiff from engaging in obvious 'procedural fencing' to gain 'some advantage in the federal forum.'" Board. Mot. 16 (citing *Reifer*, 751 F.3d at 140-141). While this argument may have merit, the Court, viewing the allegations in the complaint in the light most favorable to Plaintiff, will not fixate on this factor at this stage. *See Warth*, 422 U.S. at 501.

The remaining *Reifer* factors do not significantly impact the Court's analysis. Factors five and six do not weigh in favor of abstention as a "policy of restraint is applicable only when the same issues are pending in state court between the same parties," *see*

---

[6] The Third Circuit, noting that analysis of the *Reifer* factors "overlaps significantly," evaluated the "unsettled nature of state law under the umbrella of the third *Reifer* factor," and this Court will do the same. *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 205 (3d Cir. 2021).

[7] Arguing to the contrary, Plaintiff points to the Appellate Division's decision in *Block 268, LLC v. City of Hoboken Rent Leveling & Stabilization Bd.*, 401 N.J. Super. 563 (App. Div. 2008), which held that Section 84.4 of the Exemption Statute—addressing the requirement of filing a claim for exemption—is subject to the doctrine of substantial compliance. *Id.* at 477. Specifically, the Appellate Division in that case found that a "technical non-conformity" related to the filing was excusable under the doctrine of substantial compliance. *Id.* at 569. Notably, *Block 268* did *not* address noncompliance with the arguably more important tenant-notice requirement under Section 84.3. *Id.* at 563. In fact, the Appellate Division observed that the property owner in *Block 268* strictly complied with Section 84.3. *Id.* at 563.

[8] The Court is mindful that *Willow Ridge Apartments, LLC v. Union City Rent Stabilization Bd.*, No. 3578-20, 2022 WL 2525243 (N.J. Super. Ct. App. Div. July 7, 2022) addresses compliance with Section 83.3, but as both parties observe, it is an unpublished decision and therefore not binding.

*Dianoia's Eatery*, 10 F.4th at 206 (citation omitted), and there appears to be no risk of "duplicative litigation." The first and second factors are neutral. While a federal court declaration would resolve the uncertainty around the Exemption Statute that gave rise to this controversy, *see Reifer*, 741 F. 3d at 146, this on its own is not compelling as a state court decision would also resolve the issue. It will not inconvenience any party to litigate the case in either state or federal court in New Jersey. Finally, the eighth factor concerns insurance and is not relevant here.

In sum, we have unsettled state law controlling the action, no federal questions or interests at stake, and state court provides an adequate forum to resolve the dispute, which implicates important state policy matters. *See Mattdogg, Inc.*, 2020 WL 6111038, at *4 (observing there is generally "no federal interest involved in cases concerning purely questions of state law") (cleaned up). While there are no parallel proceedings, and a presumption thus exists that favors exercising jurisdiction, the *Reifer* factors, particularly the third and fourth factors, overcome that presumption and weigh strongly against exercising jurisdiction over Plaintiff's claims. *See, e.g., id.* (abstention pursuant to DJA discretion is proper even without parallel proceedings); *Optique LLC*, 515 F. Supp. 3d at 360 (same); *Reifer*, 751 F.3d at 148 (same). Thus, in this case, the Court will "step back" and give the state court[9] the "opportunity to resolve unsettled state law matters." *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000) (quotation marks omitted).[10]

## V. CONCLUSION

For the foregoing reasons, the Court will abstain from exercising jurisdiction over Counts One and Two. Defendants' motions to dismiss are accordingly **GRANTED**. An appropriate order follows.

WILLIAM J. MARTINI, U.S.D.J.

Date: January 14, 2025

---

[9] Under N.J. Ct. R. 4:69-6(c), the state court may "enlarge" the statute of limitations period for an action in lieu of prerogative writ "where it is manifest that the interest of justice so requires."

[10] Since the Court declines jurisdiction over Plaintiff's claims pursuant to its discretion under the DJA, it need not decide whether abstention is appropriate under the doctrine announced in *Thibodaux*.

8